1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

UNITED STATES OF AMERICA,    )
                             )
        Plaintiff,           )
                             )
    vs.                      )          CASE NO. 4:20-CR-141
                             )
GHALEB ALAUMARY,             )
                             )
        Defendant.           )
----------------------------

TRANSCRIPT OF RULE 11 HEARING
VIA VTC
**BEFORE THE HONORABLE R. STAN BAKER**
United States Courthouse
Savannah, GA
February 16, 2021

COURT REPORTER:   Kelly A. McKee, CCR, RMR, CCP, RDR
                  United States Court Reporter
                  P. O. Box 8552
                  Savannah, GA  31412
                  912-650-4065

    (Proceedings reported by mechanical stenography, transcript
produced by computer-aided transcription.)

2

```
 1                    APPEARANCES OF COUNSEL

 2    FOR THE UNITED STATES OF AMERICA:

 3         CHRISTOPHER HOWARD, Esq.
           U.S. ATTORNEY'S OFFICE
 4         22 Barnard Street, Suite 300
           P.O. Box 8970
 5         Savannah, GA  31412
           912-652-4422
 6         Email:  christopher.howard@usdoj.gov

 7    FOR THE DEFENDANT:

 8         STEVEN M. FREY, Esq.
           Frey Law Firm
 9         21 Lee Street
           Jonesboro, GA 30236
10         770-471-0599
           Fax: 770-471-1206
11         Email: Thefreylawfirm@gmail.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1                    **P R O C E E D I N G S**

2                        **(10:25 a.m.)**

3          THE COURT:  Good morning.

4          MR. FREY:  Good morning, Your Honor.

5          THE COURT:  United States District Court for the

6     Southern District of Georgia is now in session.  The Court calls

7     the case of *United States of America vs. Ghaleb Alaumary*, Case

8     4:20-CR-141.  Who's here on behalf of the United States?

9          MR. HOWARD:  Your Honor, Chris Howard for the

10    government.  We're ready to proceed.

11         THE COURT:  Thank you.  And for the defendant?

12         MR. FREY:  Your Honor, Steven Frey, and we're ready to

13    proceed as well.

14         THE COURT:  Thank you.  Mr. Alaumary, you were

15    previously brought before the Court on January 13, 2021, for an

16    initial appearance, arraignment and waiver of indictment on the

17    information filed against you in this case.  At that time the

18    United States Magistrate Judge Ray notified you what you had

19    been charged with in this case, notified you of your rights

20    regarding those charges and notified you of the maximum

21    penalties that you could face on these charges, and at that

22    point in time you waived your right for an indictment on these

23    charges and entered a plea of not guilty to the charges against

24    you.  Is all of that correct, sir?

25         THE DEFENDANT:  Yes, Your Honor.

4

1          THE COURT:  All right.  We've now received word from

2    your attorney as well as the United States Attorney's Office

3    that you wish to enter a plea of guilty to the charge against

4    you in this case.  Is that correct, sir?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Is anybody forcing you or making you do

7    this?

8          THE DEFENDANT:  No, Your Honor.

9          THE COURT:  All right.  Well, we're having this hearing

10   via video teleconference.  Because of the Coronavirus pandemic,

11   this is the safest way to have this hearing, but let me just let

12   you know this.  If at any point in time you don't understand

13   anything that I say or anything that anyone else says, I want

14   you to stop me and ask for clarification.  Will you do that for

15   me, sir?

16         THE DEFENDANT:  I understand, Your Honor.

17         THE COURT:  All right.  Also, if at any point in time

18   you need to speak with your attorney, you let me know that as

19   well.  Your attorney is here to counsel you and to represent

20   you, and so if you need to speak with him outside the earshot of

21   everyone else, you let me know that and I'll give you that

22   opportunity.  Okay?

23         THE DEFENDANT:  Thank you, Your Honor.

24         THE COURT:  And do you agree or consent to having this

25   hearing via video teleconference, sir?

5

1          THE DEFENDANT:  Yes.  I agree and consent.

2          THE COURT:  Okay.  All right.  Okay.  Whoever is in that

3    room there, the officers and whoever, please reduce the amount

4    of movement in and out of that room.  We're in the midst of a

5    federal court hearing, and I need to have the defendant's full

6    attention, and I don't need to be interrupted by whatever else

7    is going on in that room.

8          OFFICER:  All right, sir.  I'm stepping out now.

9          THE COURT:  Thank you.  All right.  Now, Mr. Alaumary, I

10   know that you've been through this process before, but in order

11   to accept your plea in this specific case, I've gotta make sure

12   that your decision to plead guilty in this specific case is

13   knowing, voluntary and intelligently made.  Now, let me state

14   also that this is a sealed matter, so this entire time we've

15   been on the record should be sealed; it has been sealed, and

16   because this is a sealed matter, the public's interest in access

17   to this hearing is outweighed by the necessity of maintaining

18   the confidentiality of the matter.  Any objection to continuing

19   on a sealed record?

20         MR. FREY:  None, Your Honor.

21         MR. HOWARD:  None from the government.

22         THE COURT:  Okay.  All right.  Very good.

23         Now, Mr. Alaumary, to be certain that your decision is

24   knowing and voluntary and intelligently made, I'm going to ask

25   you a lot of questions during this hearing, as you may recall

6

1   from the prior matter.  To be certain that your answers to my

2   questions are truthful, I'm going to have you sworn in at this

3   time.  Now, make certain that you tell the truth after you're

4   sworn in, because if you fail to do so, you could be prosecuted

5   for perjury.  Do you understand?

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  All right.  Mrs. Hammock, would you please

8   swear in Mr. Alaumary.

9           THE CLERK:  Please raise your right hand.

10                      (Defendant sworn)

11                        EXAMINATION

12  BY THE COURT:

13  Q.    Very good.  What is your full name, sir?

14  A.    Ghaleb Alaumary.

15  Q.    And I know you -- if I recall correctly, you have dual

16  citizenship with Canada.  Is that right?

17  A.    Yes, Your Honor.  Born in the States and raised in Canada.

18  Q.    And where were you born in the United States?

19  A.    Mississippi, Oxford.

20  Q.    And do you have an American Social Security Number?

21  A.    Yes, Your Honor.

22  Q.    And what are the last four digits of that Social Security

23  Number?

24  A.    I don't know them by heart, Your Honor.

25  Q.    Fair enough.  Not everybody does.  How old are you?

7

1   A.    37, Your Honor.

2   Q.    And do you have any children?

3   A.    Two daughters, Your Honor.

4   Q.    And what are their ages?

5   A.    Three and five, Your Honor.

6   Q.    And are you currently married?

7   A.    Common law.

8   Q.    And how far did you go in school?

9   A.    I went -- I finished high school, got my GED in the United

10  States and dropped out of college and did some private

11  university courses.

12  Q.    And what kind of work have you done during your life?

13  A.    A lot of marketing, wholesale, retail and -- yeah, with my

14  father, a lot of wholesale, retail, marketing, promoting.

15  Q.    And I take it you can read, write and understand the

16  English language.  Correct?

17  A.    Yes, Your Honor.

18  Q.    And have you recently or are you currently under the care

19  of a physician, a psychiatrist, a psychologist or other medical

20  professional?

21  A.    No, Your Honor.

22  Q.    Are you currently taking any medication?

23  A.    No, Your Honor.

24  Q.    Have you ever been treated for or diagnosed with any

25  mental illness?

8

1   A.    No, Your Honor.

2   Q.    Are you currently under the influence of alcohol or drugs?

3   A.    No, Your Honor.

4         THE COURT:  Mr. Frey, do you have any reason to question

5   Mr. Alaumary's competence?

6         MR. FREY:  No, sir.

7         THE COURT:  I don't either.  In this hearing as well as

8   other hearings before the Court, Mr. Alaumary has been alert.

9   He's responsive to my questions.  He clearly understands the

10  importance of the hearing today.  He has good recall of facts in

11  his life, and I can tell that he's able to participate in this

12  hearing.

13        Is that correct, Mr. Alaumary?

14        THE DEFENDANT:  Yes, Your Honor.

15  BY THE COURT:

16  Q.    But, again, if you don't understand anything at any point

17  in time, you just let me know.  Okay?

18  A.    Yes, I shall.

19  Q.    All right.  Now, the first thing I want to be certain that

20  you do understand is the difference between a plea of guilty and

21  a plea of not guilty.  A plea of guilty admits that you did what

22  the government accuses you of having done, and if I accept your

23  plea, it results in a criminal conviction against you as to the

24  charge that you plead guilty to.  Now, a plea of not guilty

25  denies the charges that have been brought against you and places

1   the responsibility upon the government to prove that charge to a

2   jury beyond a reasonable doubt before a conviction against you

3   could be authorized.  Do you understand that, sir?

4   A.    Yes, Your Honor.

5   Q.    As we gather here today, you're presumed to be innocent.

6   That means you don't have to prove that you're innocent.

7   Rather, the government is the accuser in this case, and it has

8   the responsibility under our system of justice to prove your

9   guilt beyond a reasonable doubt before a conviction against you

10   could be authorized.  You don't have to prove anything in this

11   case.  Do you understand that?

12   A.    Yes, Your Honor.

13   Q.    Now, the felony information that's been filed against you

14   in this case, it's not any evidence of your guilt.  It's just

15   what the grand -- rather, it's just what the prosecutor says

16   that you did.  Do you understand that?

17   A.    Yes, Your Honor.

18   Q.    All right.  And you've got a right to plead not guilty to

19   any offense charged against you and to persist in that plea of

20   not guilty.  Do you understand that?

21   A.    Yes, I do, Your Honor.

22   Q.    Now, if you maintain a plea of not guilty throughout this

23   matter, you would then have the right to a speedy, public jury

24   trial before a jury of 12 people selected from a cross-section

25   of the community.  Do you understand that?

10

1   A.    Yes, Your Honor.

2   Q.    You'd be represented by counsel at every stage of your

3   trial.

4        You'd be presumed innocent at your trial, and, again, the

5   government would have the burden of proving your guilt beyond a

6   reasonable doubt.

7        At trial you'd have other rights, including the right to

8   see and to hear all of the government's witnesses.  You'd have

9   the right for your attorney to cross-examine those witnesses in

10  your defense.

11       You'd have the right to remain silent, so you could

12  decline to testify.  No one could force you to testify, but you

13  could testify if you voluntarily elected to do so in your own

14  defense.  Do you understand that?

15  A.    Yes, I do, Your Honor.

16  Q.    You could also compel the attendance of witnesses and of

17  documents and to offer those in your defense if you so chose.

18  Do you understand that?

19  A.    Yes, Your Honor.

20  Q.    Now, if you go to trial and you decide not to testify or

21  not to put on any evidence, no one can use those decisions

22  against you.  Do you understand?

23  A.    Yes, I do, Your Honor.

24  Q.    Now, if you plead guilty and I decide to accept your plea,

25  you'll be giving up all those rights associated with a trial

11

1    that I just described.  Do you understand that?

2    A.    Yes, Your Honor.

3    Q.    There won't be a trial because you'll be admitting or not

4    contesting your guilt.  Do you understand?

5    A.    Yes, I do, Your Honor.

6    Q.    Do you have any questions about the rights you'll be

7    giving up by pleading guilty, Mr. Alaumary?

8    A.    No, Your Honor.

9    Q.    All right.  One right that you have and you'll continue to

10   have regardless of your decision today is the right for an

11   attorney to help you and to represent you during every stage of

12   this case.  If at any time you cannot afford an attorney, you're

13   entitled to a free one throughout the pendency of your case,

14   including a trial and any appeal in the event that you decide to

15   maintain your plea of not guilty.  Do you understand that?

16   A.    Yes, Your Honor.

17   Q.    Now, you've retained Mr. Frey to represent you in this

18   case, and he'll continue to represent you until your case is

19   concluded.  Is there anything about your relationship with your

20   attorney that's influencing your decision to plead guilty today

21   at all?

22   A.    No, Your Honor.

23   Q.    Have you had an adequate opportunity to meet with him

24   about your case?

25   A.    Yes, I did, Your Honor.

12

1    Q.    About how many times have you met with him?

2    A.    Almost every month, Your Honor.

3    Q.    Okay.  And has he reviewed with you any discovery,

4    information, documents, things like that, that the government

5    has produced regarding your case?

6    A.    Yes, Your Honor.

7    Q.    Has he talked to you about the rights that you have?

8    A.    Yes, Your Honor.

9    Q.    Have you talked with him about your right to trial and any

10   defenses that he could present if your case went to trial?

11   A.    Yes, we have, Your Honor.

12   Q.    Has he gone over your case with you and permitted you to

13   go over your case with him?

14   A.    Yes, Your Honor.

15   Q.    Has he explained to you the processes that were going to

16   take place, including this hearing today?

17   A.    Yes, Your Honor.

18   Q.    Has he generally discussed with you the federal sentencing

19   system, including the United States Sentencing Guidelines?

20   A.    Yes, we have, Your Honor.

21   Q.    Are you satisfied with the representation and advice given

22   to you in this case by your attorney?

23   A.    Yes, I am satisfied, Your Honor.

24   Q.    Do you have any complaints about him whatsoever?

25   A.    No complaints, Your Honor.

13

1   Q.    Now, Mr. Alaumary, the next thing I want to be certain

2   that you understand is the nature of the charges against you in

3   this information.  Do you understand what you've been charged

4   with in this case?

5   A.    Yes, Your Honor.

6   Q.    Do you understand what the United States would have to

7   prove in order for you to be found guilty of this charge?

8   A.    I do, Your Honor.

9   Q.    Specifically, you've been charged in Count 1 with

10  conspiracy to commit money laundering, in violation of 18 United

11  States Code Section 1956(h).  In order to be found guilty of

12  that charge, the United States would have to prove, first, that

13  there was an agreement between two or more persons to violate 18

14  United States Code Section 1956 by, one, knowingly conducting a

15  financial transaction involving proceeds of wire or computer

16  fraud that defendant knew involved proceeds of unlawful activity

17  and that defendant knew such transaction was designed in whole

18  or in part to conceal or disguise the proceeds' nature,

19  location, source, ownership or control; or, two, transporting,

20  transmitting or transferring money or funds that were proceeds

21  of wire or computer fraud that defendant knew were the proceeds

22  of an unlawful activity from the United States to or through a

23  place outside the United States and that defendant knew --

24        Looking at the summary of the plea right now, that's where

25  I'm reading these elements from, Mr. Howard, and what it says is

1   that defendant knew was to conceal or disguise the proceeds'

2   nature, location, source, ownership or control.  Should that be

3   that he knew the purpose was to conceal or disguise?  Take your

4   time.

5          MR. HOWARD:  No, Your Honor.  Yes.  I think it should.

6   And I think the plea agreement sort of lays it all out.  All the

7   elements are in the signed plea agreement, but in the summary

8   that Your Honor is looking at, when we're talking about the

9   purpose under two was the defendant knew the purpose of all of

10  that was to conceal or disguise the nature, location, source,

11  ownership or control.

12         THE COURT:  Okay.  Thank you.  Wanted to be sure that

13  I've got that typo corrected appropriately.

14  BY THE COURT:

15  Q.   Mr. Alaumary, let me review that with you again.  I was

16  going over with you the agreement, and there was an agreement by

17  two or more persons to violate Section 1956 by -- and then

18  there's these different ways.  And I gave you the first one, you

19  know, number one, and then I stopped in the middle of the second

20  one.  Okay?  I said, or transporting, transmitting, et cetera,

21  and then there was a typo.  So let me go over that with you

22  again to be sure I give you the second way in which it could be

23  violated appropriately.  Or, two, transporting, transmitting or

24  transferring money or funds that were proceeds of wire or

25  computer fraud the defendant knew were the proceeds of unlawful

1  activity from the United States to or through a place outside

2  the United States and that defendant knew the purpose of that

3  was to conceal or disguise the proceeds' nature, location,

4  source, ownership or control; or, three, knowingly engaging in a

5  monetary transaction in value greater than $10,000 and property

6  criminally derived from wire fraud or computer fraud.  And then

7  the second element, second, that you knew about the plan's

8  unlawful purpose and voluntarily joined in it.

9      Do you understand those elements and what the United

10  States would have to prove in order for you to be found guilty

11  of this charge?

12  A.    Yes, I do, Your Honor.

13  Q.    Now, obviously there's a lot of legalese in there and a

14  lot of words that have a lot of meaning to them, but I take it

15  you've talked about these elements with Mr. Frey in advance of

16  today's hearing; correct?

17  A.    Correct, Your Honor.

18  Q.    And he explained to you in advance of today's hearing what

19  the United States would have to prove in order for you to be

20  found guilty of these charges; correct?

21  A.    Yes, Your Honor.

22  Q.    Do you have any questions about the charge itself and what

23  the United States would have to prove in order for you to be

24  found guilty of the charge?

25  A.    No, Your Honor.

1  Q.    Okay.  Now, the next thing I want to discuss with you is

2  the potential sentence in this case.  If I accept your plea

3  today, you won't be sentenced today.  Rather, I'll direct the

4  United States Probation Office to conduct a presentence

5  investigation, and then after preparation of the presentence

6  investigation report and time period for objections, you'll be

7  brought back to the Court for a sentencing hearing.  Do you

8  understand the process the Court will follow in determining your

9  sentence?

10  A.    Yes, I do, Your Honor.

11  Q.    Now, the maximum sentence by statute that the Court could

12  ever impose for a conviction on this charge is as follows:

13        Imprisonment for not more than 20 years, a fine of not

14  more than $500,000, or twice the gross gain or gross loss

15  resulting from the offense, whichever is greater, supervised

16  release of not more than three years, and a $100 special

17  assessment.  Do you understand those statutory penalties?

18  A.    Yes, Your Honor.

19  Q.    In addition to those penalties, I have the power to order

20  forfeiture.  Also, there could be a requirement that you make

21  restitution to any victims.  Now, when determining where to

22  sentence you within the statutory range, I will consult the

23  United States Sentencing Guidelines.  The guidelines provide a

24  range of months within which the Sentencing Commission suggests

25  that someone be sent to prison, and a number of factors go into

1   calculating someone's guideline range.

2        I'll calculate your guideline range, and I'll determine it

3   in considering your sentence, but I'm not required to sentence

4   you within the guidelines, and I can vary or depart upward or

5   downward based upon the specific facts of your case.  Do you

6   understand that?

7   A.    Yes, I do, Your Honor.

8   Q.    The guidelines are merely advisory.  Do you understand?

9   A.    Absolutely, Your Honor.

10  Q.    Ultimately I'll determine your sentence based upon the

11  factors that Congress set forth in a statute at 18 United States

12  Code Section 3553.

13       Now, have you talked with Mr. Frey about the various

14  factors that may affect your sentence, Mr. Alaumary?

15  A.    Yes, Your Honor.

16  Q.    You understand it's impossible to know exactly what your

17  guideline range will be, and it's impossible to know exactly

18  what your sentence will be.  Do you understand that?

19  A.    I do, Your Honor.

20  Q.    Has anyone made any promises or guarantees to you about

21  what sentence you'll receive?

22  A.    No, Your Honor.

23  Q.    Good, because no one can predict your sentence, because

24  it's solely up to the Court to decide what sentence you'll

25  receive.  So no one can predict it, and if anybody's given you a

18

1    sentencing estimate, that estimate is not binding on them; it's

2    not binding on the Court.  It's just that, an estimate, a best

3    guess.  Do you understand?

4    A.    I do, Your Honor.

5    Q.    And if you plead guilty, I can sentence you to the maximum

6    extent allowed by law just as if you'd gone to trial and been

7    found guilty of the charge you're pleading guilty to.  Do you

8    understand that?

9    A.    Absolutely, Your Honor.

10   Q.    And if you receive a sentence that's more harsh than the

11   sentence you thought you were going to receive, that won't be

12   grounds for withdrawing your guilty plea.  Do you understand?

13   A.    Yes, I do, Your Honor.

14   Q.    Now, I mentioned the penalty of supervised release

15   previously.  Supervised release is a very real part of the

16   federal sentencing system.  After someone's incarcerated,

17   they're on supervised release, and they have to comply with the

18   rules and the orders of the Court, and if they fail to comply

19   with the rules and the orders of the Court, I can revoke their

20   supervised release and require them to serve more time in

21   prison.  Do you understand that?

22   A.    I do, Your Honor.

23   Q.    Another significant aspect of federal sentencing is that

24   parole has been abolished and you have to serve your full

25   sentence.  Do you understand?

1   A.    Yes, I do, Your Honor.

2   Q.    Now, the charge that you're pleading guilty to, or

3   proposing to plead guilty to, is a felony charge, and if you

4   plead guilty and I accept your plea, you'll have a felony

5   conviction; and a felony conviction costs you many of your civil

6   rights.  So if I accept your plea of guilty, you'll lose the

7   right to vote, to hold public office, to serve on juries and to

8   ever possess a firearm.  Do you understand that?

9   A.    Yes, I do, Your Honor.

10  Q.    And if you're on probation or parole in some other case, a

11  plea of guilty in this case could result in the revocation of

12  your probation or your parole.  Also, a plea of guilty in this

13  case could be taken into consideration in the event you ever

14  have a future case.  Do you understand that?

15  A.    Yes, Your Honor.

16  Q.    Also, employers, educational institutions, governmental

17  entities, licensing authorities and others could take your plea

18  and conviction into consideration when determining your

19  eligibility for certain benefits and opportunities and things of

20  that nature.  Do you understand?

21  A.    Yes, Your Honor.

22  Q.    And I understand that you have dual citizenship, but just

23  let me warn you that if you're not a citizen of the United

24  States, in addition to the other possible penalties you are

25  facing, a plea of guilty could subject you to deportation,

20

1  exclusion or voluntary departure and prevent you from obtaining

2  U.S. citizenship or from reentering the United States.  Do you

3  understand that?

4  A.    Absolutely, Your Honor.

5  Q.    Okay.  Do you understand everything I've said up to this

6  point, sir?

7  A.    A to Z, Your Honor.

8  Q.    All right.  Do you have any questions of me or of your

9  attorney at this time at all?

10  A.    No questions, Your Honor.

11  Q.    All right.  Now, I understand you signed a written plea

12  agreement with the United States; is that correct?

13  A.    Yes, Your Honor.

14  Q.    And I take it Mr. Frey went over that entire plea

15  agreement with you before you signed it?

16  A.    Yes, Your Honor.

17  Q.    And he had your authority to negotiate that plea agreement

18  on your behalf; is that right?

19  A.    Yes, he did, Your Honor.

20  Q.    Okay.  And are you confident that you understand

21  everything that your plea agreement says, Mr. Alaumary?

22  A.    Everything, Your Honor.

23  Q.    And are you confident that you understand everything that

24  your plea agreement means?

25  A.    Yes, Your Honor.

21

1  Q.    Do you understand that by initialling and signing that

2  plea agreement you're agreeing to be bound by its terms and

3  agreeing that all the facts contained therein are true and

4  accurate?

5  A.    Yes, Your Honor.

6  Q.    And, again, I know Mr. Frey went over that entire plea

7  agreement with you.  Did you read all of it before you signed

8  it?

9  A.    Yes, Your Honor.

10  Q.    Okay.  All right.  At this time let's bring up the plea

11  agreement on the screen, please.

12        Mr. Alaumary, can you see that plea agreement there, sir?

13  A.    I do, Your Honor.

14  Q.    And is that your plea agreement with the United States?

15  A.    Yes, Your Honor.

16  Q.    Okay.

17        THE COURT:  And, Mr. Frey, is that your signature on

18  that plea agreement?

19        MR. FREY:  It is, Your Honor.

20        THE COURT:  And, Mr. Howard, are those your initials on

21  that plea agreement?

22        MR. HOWARD:  Yes, Your Honor.

23        THE COURT:  And if we keep scrolling through the plea

24  agreement.

25        Let me stop you right there.

22

```
1    BY THE COURT:
2    Q.   Mr. Alaumary, I notice the initials G.A. on the bottom
3    right-hand corner of that plea agreement.  Are those your
4    initials, sir?
5    A.   Yes, Your Honor.
6    Q.   And did you place those initials on your plea indicating
7    that you had read the page you're initialling and that you
8    understand that page?
9    A.   Yes, Your Honor.  Right at the bottom of the page.
10   Q.   Okay.
11        You can keep going, Ms. Hammock.
12        And then we've clicked through every page, and everyone's
13   able to see it.  We're now on what's numbered -- it's actually
14   Page 26 of this PDF, but it's numbered 25 at the bottom, and
15   then there's a number of signatures on that page.
16        Mr. Alaumary, it appears your signature is on that page on
17   November the 2nd, 2020.  Is that your signature, sir?
18   A.   Yes, Your Honor.
19   Q.   Okay.
20        THE COURT:  And then, Mr. Frey, is that your signature
21   above your printed name there as well?
22        MR. FREY:  It is, Your Honor.
23        THE COURT:  And then, Mr. Howard, is that a signature of
24   an Assistant United States Attorney above that spot there as
25   well?
```

1          MR. HOWARD:  It is, Your Honor.

2          THE COURT:  Okay.  And that was signed on behalf of the

3    United States Attorney's Office for the Central District of

4    California.  Correct?

5          MR. HOWARD:  That's correct.

6          THE COURT:  But that's a representation of the United

7    States in this specific case; correct?

8          MR. HOWARD:  It is, Your Honor.  And that's why we did

9    that sort of first page cover page to incorporate all of the

10   terms agreed to in the Central District, incorporate those so

11   that those would be binding here on the parties in the Southern

12   District of Georgia.

13         THE COURT:  Very good.  Thank you for that explanation.

14         We can keep clicking through the next 20 pages of that

15   plea agreement, Mrs. Hammock.

16         Mr. Alaumary, is that your signature there as well on

17   Page 27 of the PDF, 26 of the plea?

18         THE DEFENDANT:  It is, Your Honor.

19         THE COURT:  Okay.  And then the next page, I believe,

20   Mr. Frey, that's your signature there as well?

21         MR. FREY:  It is, Your Honor.

22         THE COURT:  Okay.  All right.  And then there's exhibits

23   to this plea.

24         Do those look like -- Exhibit A there, do those look

25   like accurate exhibits to the plea, Mr. Frey and Mr. Howard?

24

```
1            MR. FREY:  It does.

2            MR. HOWARD:  Yes, Your Honor.

3            THE COURT:  Okay.  All right.

4   BY THE COURT:

5   Q.   All right, Mr. Alaumary.  We've gone through every page of

6   this 46-page document.  Does that appear to be the entirety of

7   your plea agreement with the United States?

8   A.   It is, Your Honor.

9   Q.   And did you recognize every page in there?

10  A.   Yes, sir, I did, Your Honor.

11           THE COURT:  And, Mr. Frey, is that the entirety of the

12  plea agreement?

13           MR. FREY:  It is, Your Honor.

14           THE COURT:  And, Mr. Howard, is that the entirety of the

15  plea agreement?

16           MR. HOWARD:  Yes, it is.

17           THE COURT:  Okay.  Mr. Howard, would you summarize for

18  us the material portions of this plea -- well, I should state,

19  the plea agreement has been presented to the Court and the

20  signatures have been certified.

21           Now, Mr. Howard, would you summarize this plea agreement

22  for us, please.

23           MR. HOWARD:  Yes, Your Honor.  The defendant agrees to

24  waive the right to be charged by indictment.  He agrees to plead

25  guilty to Count 1 of the information, and he agrees to the
```

1  factual basis in the plea agreement.

2        He further agrees to cooperate fully with the U. S.

3  Attorney's Office, the FBI and Secret Service, and the

4  government in its sole discretion will decide whether that

5  cooperation qualifies as substantial assistance that warrants

6  the filing of a motion for downward departure or reduction in

7  sentence.

8        Defendant agrees to pay restitution for the full loss

9  caused by his total criminal conduct, which isn't limited to the

10  specific count which he's pleading guilty; and, specifically,

11  the parties believe the applicable amount of restitution is

12  approximately $23,425,639.04, but the parties recognize and

13  agree that this amount could change based on facts that come to

14  the attention of the parties prior to sentencing.

15        The defendant and the government agree to the loss

16  amount specified in Paragraph 15 of the plea agreement and to

17  certain applicable sentencing guideline factors set forth in

18  Paragraph 17 of the plea agreement.

19        The defendant waives his right to appeal his conviction

20  on any ground, with the exception that's outlined in the terms

21  of the plea agreement, and he further waives his right to appeal

22  his sentence provided the Court does not impose a sentence above

23  the statutory maximum.

24        He waives his right to collaterally attack his

25  conviction and sentence, including, but not limited to, a 28

26

1    U.S.C. Section 2255 motion, with certain exceptions that are

2    outlined in the terms of the plea agreement.  He waives the

3    right to the return of any digital data on devices and/or

4    digital media seized from him, and he waives any defense as to

5    venue.

6           In exchange, the government agrees to recommend a

7    three-level reduction to the applicable Sentencing Guidelines if

8    the defendant demonstrates an acceptance of responsibility up to

9    and including the time of sentencing and it's otherwise

10   available under Section 3E1.1.

11          The government agrees not to further prosecute the

12   defendant for certain violations as specified in Paragraph 5D of

13   the plea agreement.  The government agrees to recommend that the

14   sentence in this case run concurrent to any sentence imposed

15   against the defendant in Case Number 4:20-CR-027 currently

16   pending in the Southern District of Georgia.

17          Further, the government agrees to waive its right to

18   appeal any sentence at or below the statutory maximum, with the

19   exception that the government may appeal the amount of

20   restitution if that amount is less than the amount specified in

21   Paragraph 26.

22          Those are the material terms of the plea agreement, a

23   summary of that very long plea agreement, Your Honor.

24          THE COURT:  Thank you, Mr. Howard.

25          Mr. Frey, was that an accurate summary of the plea

27

1  agreement that you negotiated on Mr. Alaumary's behalf?

2       MR. FREY:  It is, Your Honor.

3       THE COURT:  Mr. Alaumary, were you able to hear that

4  entire summary of your plea?

5       THE DEFENDANT:  Yes, I did, Your Honor.

6       THE COURT:  And was that an accurate summary of your

7  plea agreement with the United States?

8       THE DEFENDANT:  Accurate, Your Honor.

9       THE COURT:  Okay.  And you understand that while you and

10  the government have agreed to some things like loss amount and

11  certain applicable Sentencing Guideline factors, it's solely up

12  to the Court to decide what sentence you'll receive.  Do you

13  understand that?

14       THE DEFENDANT:  I do, Your Honor.

15       THE COURT:  Okay.  And, also, do you understand that

16  through this plea agreement, with some very limited exceptions,

17  you've waived your right to appeal and waived your right to

18  collaterally attack your sentence?

19       THE DEFENDANT:  Yes, I do, Your Honor.

20       THE COURT:  And Mr. Howard just laid out the exceptions

21  to those waivers, and you understand that those are part and

22  parcel of this plea agreement.  Do you understand that?

23       THE DEFENDANT:  Yes, Your Honor.

24       THE COURT:  And are you willing to waive your appeal and

25  collateral attack rights as part of this plea agreement with

1    those limited exceptions that Mr. Howard laid out?

2         THE DEFENDANT:  Yes, I do, Your Honor.

3         THE COURT:  Okay.  Do you have any questions about those

4    appeal and collateral attack waivers at all?

5         THE DEFENDANT:  No, Your Honor.

6         THE COURT:  All right.  Do you have any questions about

7    your plea agreement at all?

8         THE DEFENDANT:  No, Your Honor.

9         THE COURT:  All right.  Now, as far as a proffer for the

10   plea, Mr. Howard, is there a factual proffer contained in the

11   plea agreement already?

12        MR. HOWARD:  There is, Your Honor, and it spans about

13   five pages.  It begins and is the entirety of paragraph numbered

14   15 that begins --

15        THE COURT:  Let me bring that up on the screen, and then

16   Mrs. Hammock can scroll to it.  And rather than you reading over

17   that entirety, we can just review that with Mr. Alaumary on the

18   screen, and he can read anything he needs to read.  He may have

19   already read it enough and talked about it with his attorney

20   enough.  But then we can see if that's a sufficient proffer.

21        Mr. Frey, do you object to proceeding in that manner at

22   all?

23        MR. FREY:  No, Your Honor.

24        THE COURT:  Mr. Howard, is that sufficient for you as

25   well?

29

```
1            MR. HOWARD:  Yes, Your Honor.

2            THE COURT:  Okay.  Let's bring up that plea.

3            And, Mr. Howard, you can direct Mrs. Hammock to which

4    page and paragraph it is.

5            MR. HOWARD:  So she has correctly pulled up the exact

6    one.  So we're looking at Page 11 of the plea agreement, and

7    it's Paragraph 15.  There is the heading there of factual basis.

8    And so it spans, then, from Pages 11 all the way and it

9    concludes on Page 16.

10           THE COURT:  And, Mr. Alaumary, do you see that Paragraph

11   15?

12           THE DEFENDANT:  Yes, I do, Your Honor.

13           THE COURT:  And you've already read over that entire

14   paragraph with your attorney, Mr. Frey; correct?

15           THE DEFENDANT:  Many times, Your Honor.

16           THE COURT:  Okay.  And I see you've initialed each page

17   where that factual basis is.  Correct?

18           THE DEFENDANT:  I did, Your Honor.

19           THE COURT:  All right.  Well, let's just keep scrolling

20   through it just to be certain that's the factual basis that

21   you've agreed to.

22           All right.  I've also reviewed that full factual basis

23   that's set out in the plea.  Mr. Alaumary, have you had enough

24   time to review that factual basis?

25           THE DEFENDANT:  I did, Your Honor.
```

1        THE COURT:  And do you agree to all the facts contained

2    in Paragraph 15?

3        THE DEFENDANT:  I do, Your Honor.

4        THE COURT:  Is there anything in that paragraph that you

5    disagree with?

6        THE DEFENDANT:  No, Your Honor.

7        THE COURT:  Okay.  Having reviewed that factual basis, I

8    find that that's a sufficient factual basis for the plea in this

9    case.

10       Anything additional to offer, Mr. Frey, on that matter?

11       MR. FREY:  No, Your Honor.

12       THE COURT:  Mr. Howard?

13       MR. HOWARD:  No, Your Honor.

14       THE COURT:  Okay.  Mr. Alaumary, do you still want to

15   plead guilty?

16       THE DEFENDANT:  Yes, I do, Your Honor.

17       THE COURT:  All right.  Other than the promises and the

18   representations that are contained in that plea agreement, are

19   you relying on any other promise or any other representation in

20   deciding to plead guilty?

21       THE DEFENDANT:  No, Your Honor.

22       THE COURT:  Has anybody threatened you, pressured you,

23   intimidated you or done anything of that nature to get you to

24   give up your rights and plead guilty?

25       THE DEFENDANT:  No, Your Honor.

1          THE COURT:  Did anybody lean on you, bribe you or

2   promise you anything to get you to enter this plea?

3          THE DEFENDANT:  No, Your Honor.

4          THE COURT:  Mr. Howard and then Mr. Frey, are there any

5   actions or omissions that should be brought to my attention or

6   the defendant's attention before he pleads?

7          MR. HOWARD:  No, Your Honor.

8          MR. FREY:  No, Your Honor.

9          THE COURT:  Mr. Alaumary, are you pleading guilty

10  voluntarily and of your own free will?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Are you pleading guilty because you are, in

13  fact, guilty of committing this crime?

14         THE DEFENDANT:  I am, Your Honor.

15         THE COURT:  And have you fully discussed your case with

16  your attorney?

17         THE DEFENDANT:  Yes, I have, Your Honor.

18         THE COURT:  And are you satisfied with the services that

19  your lawyer has rendered in your case to this point?

20         THE DEFENDANT:  Absolutely, Your Honor.

21         THE COURT:  As to Count 1 of the information, conspiracy

22  to commit money laundering, how do you plead?  Guilty or not

23  guilty?

24         THE DEFENDANT:  Guilty, Your Honor.

25         THE COURT:  The record should reflect the defendant has

32

1   pleaded guilty to Count 1 of the information.

2        Let's bring up the change of plea sheet at this time

3   that was executed in advance of the hearing.

4        Now, there's electronic signatures on that document.

5   Obviously we're using electronic signatures more frequently

6   because of the Coronavirus pandemic.

7        But, Mr. Alaumary, do you adopt that electronic

8   signature on the change of plea sheet on your screen as the

9   signature of your own?

10        THE DEFENDANT:  Yes, Your Honor.

11        THE COURT:  And, Mr. Frey, do you adopt that as your

12   signature as well?

13        MR. FREY:  Yes, sir, I do.

14        THE COURT:  Okay.  Well, the defendant's signature and

15   the counsel's signature on this change of plea sheet have been

16   certified, and the change of plea will be entered into the

17   record of the hearing.

18        That having been done, Mr. Alaumary, I find that you're

19   competent.  I find you fully understand this charge.  I find

20   there's a factual basis for your plea of guilty.

21        You know the maximum punishment that could be imposed on

22   these charges, or this charge rather.  You know your jury

23   rights.  You've knowingly and voluntarily waived those rights.

24   And having interacted with you this morning, I can certainly

25   certify that your decision to plead guilty is voluntary; it's

1   knowing; it's intelligently made, and it's not the result of any

2   force or pressure or threats or promises, other than the

3   promises made by the United States in the plea agreement.  And

4   you've clearly had the assistance of counsel in entering this

5   plea.  Is all of that correct, sir?

6          THE DEFENDANT:  Correct, Your Honor.

7          THE COURT:  All right.  Therefore, I accept your plea,

8   and I adjudge you guilty of Count 1 of the information based on

9   your plea of guilty.

10          All right.  Now, as far as the sentencing phase of this

11   case, I'm going to direct the United States Probation Office to

12   conduct a presentence investigation in this case and to prepare

13   a presentence investigation report and to disclose that report

14   to counsel for the United States and counsel for the defendant.

15          Now, it should be disclosed in a sealed manner.

16   Obviously, the entire case is sealed at this time, but the

17   presentence investigation report as well as other sentencing

18   materials in this case should be filed in a manner that they

19   will remain sealed even if the case is unsealed.  Sentencing

20   materials have sensitive, confidential information in them that

21   are traditionally kept outside of the public's view, and I think

22   that's appropriate in this case as well so that I can get a

23   candid and complete view of the information I need to determine

24   the appropriate sentence in this case.

25          Now, obviously, we'll use the CM/ECF system for the

34

1    exchanging of the presentence investigation report.

2          Mr. Alaumary, you'll have the opportunity to have an

3    interview with the United States Probation Office as part of the

4    presentence investigation, and you have the right for your

5    attorney to be present during that interview.

6          Now, after the report is finalized, you'll be brought

7    back to the Court for a sentencing hearing.

8          Now, when the presentence investigation report is

9    prepared, if you're still detained, Mr. Frey can bring it to you

10   or review it with you electronically there at the detention

11   facility, but he won't be able to mail a copy to you or leave a

12   copy with you at the detention facility, because it will have

13   sensitive, confidential information in it that you don't want

14   floating around a detention facility.  Okay?

15         THE DEFENDANT:  Okay.

16         THE COURT:  So by all means read every single word of

17   that presentence investigation report.  If you don't agree with

18   anything in there, let him know and he'll file an objection.

19   Okay?

20         Now, as far as a time period for the PSI in this case,

21   we have a sentencing hearing already set in the other case.  I

22   believe that's for June the 8th, 2021, at 10:00.  Is that

23   correct, Mrs. Hammock?

24         THE CLERK:  Yes, sir.

25         THE COURT:  Counsel, it makes sense to me to have the

1    sentencing hearings on the same date.  Is there anything that I

2    don't know, though, that would caution against that?

3          Mr. Howard?

4          MR. HOWARD:  Your Honor, it is certainly the

5    government's preference to do both sentencings on the same date.

6          In terms of time frame, I expect that there will be a

7    motion from the government to continue that sentencing to a

8    later date.  This particular individual is cooperating against

9    other individuals in ongoing cases in the Central District of

10   California for which a trial, I don't think, certainly going to

11   happen this month or next month, so it's going to be a few

12   months.

13         So all that being said, to answer your question, we

14   would prefer one sentencing for both cases.

15         THE COURT:  Why don't I do this for the time period.

16   I'm going to go ahead and set the PSI date and everything else

17   as if we're preparing for a June 8th, 2021, sentencing.  That'll

18   enable everybody to get the PSI done, get objections filed, et

19   cetera.  And then if there is a motion to continue, you can file

20   it in both cases, and then we're on track in both cases, so

21   we're not continuing one case, not continuing another.  We'll

22   just get everything on the same track, so when we are prepared

23   to go forward with sentencing, we're prepared in both of them.

24   Does that make sense, Mr. Frey?

25         MR. FREY:  It does, Your Honor.

1          THE COURT:  Okay.  Well, 77 days from today's date would

2    be May the 4th, 2021.  So the PSI will be filed by that date.

3    Objections will be due based upon when the PSI is filed.

4    Sentencing memorandums, letters from family members, things like

5    that, I need to get those six days in advance of the sentencing

6    hearing.  So that would be June the 2nd, 2021.  That'll set us

7    up for a sentencing hearing on that June the 8th, 2021, date.

8          If that sentencing date is continued, that's fine, but I

9    want to continue to keep that PSI date and objections date,

10   unless there's something germane to the PSI itself that we need

11   to continue.  So I don't want to extend the PSI date just

12   because we're extending the sentencing date.  Does that make

13   sense?

14          MR. HOWARD:  Yes, Your Honor.

15          THE COURT:  Okay.  All right.  Anything further

16   regarding sentencing and everything, the deadlines that I've

17   just set from the United States?

18          MR. HOWARD:  No, Your Honor.

19          THE COURT:  Mr. Frey, anything on the sentencing side of

20   this?

21          MR. FREY:  Not on the sentencing side, Your Honor.

22          THE COURT:  Mr. Riggs, does that make sense what I'm

23   doing there, from the United States Probation Office?

24          USPO RIGGS:  Yes, sir.  Thank you.

25          THE COURT:  Thank you.  Okay.  You know, as far as

1   detention is concerned, I always bring up the issue of detention

2   after a plea.

3          You know, there's a detention order in this case.  We've

4   had some issues with detention in the other cases where I've set

5   a bond, the conditions of that bond have not yet been met.

6   There's been some motions regarding that bond.

7          Is there a request to bring up detention at this time,

8   Mr. Frey?

9          MR. FREY:  Your Honor, I would like to discuss it.  Yes,

10   sir.  I understand that the detention issues involving the other

11   matter are not before the Court.  Obviously they would be

12   germane to any determination the Court would make about

13   detention, but I would -- we would move for detention at the

14   time the Court deems appropriate.  I mean, excuse me, move to

15   address the issue.

16          THE COURT:  Right.  And, Mr. Howard, does the United

17   States -- what's the United States' position on detention in

18   this case?

19          MR. HOWARD:  Your Honor, we're asking for -- that

20   Mr. Alaumary continue to be detained.

21          THE COURT:  Well, rather than trying to address that,

22   you know, at the conclusion of this hearing with not a full

23   record before me, what I would -- what I'm going to do is

24   provide the defendant an opportunity to file a written motion.

25   And it may be that you're just asking for the same bond that's

38

1    set in the other case, or some, you know, type of modification

2    of that bond.  That way we're dealing with it, again, in a

3    consolidated fashion, rather than doing something in this case

4    and it not being clear on the record in the other case what it

5    is that we've done in this case.  So you can file it in this

6    case with, you know -- he's going to remain detained absent any

7    other order.  So it behooves the defense to file it as soon as

8    you want -- as soon as you can.

9          Mr. Howard, I'll give you 7 days to respond to any

10   motion that he files.  Does that give you enough time,

11   Mr. Howard?

12         MR. HOWARD:  Yes, Your Honor.

13         THE COURT:  Okay.  And let's just make sure that it's

14   clear that it's applicable in all the cases.  And bring any

15   information you can to me, and if there are some conditions or a

16   combination of conditions that I can impose that will meet the

17   purposes of the Bail Reform Act, well, then, obviously I'm

18   obligated to grant it.  But if there are not, there are not.

19   And we'll just take a look at it and see.  Okay?

20         MR. FREY:  Yes, sir.

21         THE COURT:  All right.  He'll remain detained until

22   further order of the Court.

23         MR. FREY:  I'll have -- yes, sir.  I'll have that filed

24   as soon as possible.

25         THE COURT:  Very good.  All right.  Anything further on

39

1    this matter at this time from the United States?

2           MR. HOWARD:  No, Your Honor.

3           THE COURT:  Mr. Frey, anything on behalf of

4    Mr. Alaumary?

5           MR. FREY:  Not at this time, Your Honor.

6           THE COURT:  Mr. Alaumary, do you have any questions

7    about anything we've done here today, sir, at all?

8           THE DEFENDANT:  No, Your Honor.

9           THE COURT:  All right.  Counsel, you're excused with the

10   Court's appreciation.  And absent anything else, we'll see you

11   all at the sentencing hearing in this case.  Okay?  All right.

12   Good day, everyone.

13          MR. HOWARD:  Thank you.

14                (Proceedings concluded at 11:06 a.m.)

15                           -  -  -

16

17

18

19

20

21

22

23

24

25

40

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3            I, Kelly A. McKee, Registered Diplomate Reporter,

4    Registered Merit Reporter and Certified Realtime Reporter, in

5    and for the United States District Court for the Southern

6    District of Georgia, do hereby certify that pursuant to Section

7    753, Title 28, United States Code, that the foregoing is a true

8    and correct transcript of the stenographically reported

9    proceedings held in the above-entitled matter and that the

10   transcript page format is in conformance with the regulations

11   of the Judicial Conference of the United States.

12

13           Dated this 24th day of January, 2022.

14

15

16           /s/ Kelly A. McKee

17           KELLY A. McKEE, CCR, RMR, CCP, RDR

18

19

20

21

22

23

24

25